Filed 1/24/25  P. v. Drummer CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARCELLOUS DRUMMER,<br><br>        Defendant and Appellant. | H051441<br>(Santa Clara County<br>Super. Ct. No. C1477595) |

In November 2014, a Santa Clara County jury found defendant Marcellous Drummer guilty of murder and other crimes arising out of a home invasion robbery.  The jury also found a felony-murder special circumstance subjecting Drummer to life imprisonment without possibility of parole.  (Penal Code, § 190.2, subd.  (a)(17).) (Subsequent undesignated statutory references are to the Penal Code.)  After Drummer successfully appealed several aspects of his case (*People v. Drummer* (June 15, 2017, H041826) [nonpub. opn.]), the Legislature amended the law governing felony murder, and Drummer filed a petition under former section 1170.95 (now section 1172.6) to vacate his murder conviction and be resentenced on his remaining convictions.  The trial court denied the petition without a hearing, but this court reversed and remanded with directions to conduct an evidentiary hearing.  (*People v. Drummer* (Dec. 23, 2022, H048756) [nonpub. opn.].)

On remand, the trial court held a hearing to determine whether Drummer was guilty of felony murder under current law.  Finding that Drummer was a major participant in the home invasion robbery and acted with reckless indifference to human life, the trial court concluded that he was guilty of felony murder under current law and denied his petition.

Drummer now appeals, challenging the sufficiency of the evidence underlying the trial court's findings.  For the reasons explained below, we conclude that those findings are supported by substantial evidence and affirm the order denying Drummer's petition.

## I. BACKGROUND

The facts below are drawn primarily from the transcripts of Drummer's 2014 trial, which were admitted at Drummer's section 1172.6 evidentiary hearing.[1]

### A. The Charges

In September 2014, the Santa Clara County District Attorney filed a first amended information charging Drummer with six offenses related to a November 2012 home invasion in Monte Sereno in which Raveesh K. and his ex-wife Harinder K. were robbed and Raveesh was killed.  Count 1 of the information charged that, on or about November 30, 2012, Drummer murdered Raveesh with malice aforethought (§ 187) and the special circumstance that this murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)).  Count 2 charged robbery of an inhabited place while acting in

---

[1] In the hearing, the parties submitted as Exhibit 1 a compilation containing volumes 2 through 11 of the trial transcripts, with certain portions redacted, and exhibits from the trial.  On our own motion, we augment the record on appeal to include Exhibit 1.  (See Cal. Rules of Court, rule 8.155(a)(1)(A); *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1570, fn. 3 [augmenting record on the court's own motion to include trial court documents not designated by the parties].)  We also have granted Drummer's request to take judicial notice of the appellate record from his direct appeal, *People v. Drummer*, *supra*, H041826. Finally, on our own motion, we take judicial notice of our opinion in a related case, *People v. Garcia* (Aug. 16, 2024, H050818) [nonpub. opn.]).  (Evid. Code, §§ 452, subd. (d), 459.)

concert with others (§§ 211, 213, subd. (a)(1)(A)), count 3 assault with a deadly weapon (§ 245, subd. (a)(1)), count 4 criminal threats (§ 422), and counts 5 and 6 false imprisonment (§§ 236, 237). All six counts contained allegations that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(B), (b)(1)(C), (b)(4)), and the information alleged that Drummer had served a prior felony prison term (§ 667.5, subd. (b)).

Two others, DeAngelo Austin and Javier Garcia, were separately charged with crimes relating to the home invasion.

## B. The Initial Proceedings

### 1. The Evidence Presented at Trial

Austin's sister Katrina Fritz worked as a prostitute and for over 10 years beginning in 1997 one of her clients was Raveesh. As a result Fritz had frequently been at Raveesh's Monte Sereno home, which he typically left unlocked, and she brought her brother there several times.

In late November 2012, Austin told Fritz that he wanted to go to Raveesh's home, which she understood to mean that he was planning to rob Raveesh, and he asked for a layout of the house. After Fritz drew the layout, she met with Austin and Drummer and gave them the layout. Drummer said something like, "I bet they have a lot of gold" and that he thought gold was very valuable at the time. Later that night, Austin called Fritz and said he was outside Raveesh's house watching him drinking alcohol.

Harinder, who continued to share the Monte Sereno house with Raveesh after their divorce, was awakened when a man, whom she identified to the police as Austin, walked into her bedroom. Austin hit her in the face, causing her lip to bleed. When Harinder screamed, Austin threatened to kill her and brought her to the kitchen.

In the kitchen, Harinder saw Raveesh standing with his hands tied behind his back and someone trying to push him down. She implored, "Don't push him. He's a heart patient. He'll die. And he has a breathing problem." Raveesh also was "asking for help"

3

and pleaded "[i]f somebody can open me." Nevertheless, Raveesh was pushed to the floor, and at some point he was struck at least three times. Hearing Raveesh struggle, Harinder pleaded two or three times, "Please don't do that to him. He'll die." Later, she asked the man sitting in a chair next to her to check on Raveesh because he had not made any noise. The man did so, but told Harinder that Raveesh was okay.

Once the robbers left, Harinder called 911. Although the robbers had broken most of the phones in the house, she found one buried under a pile of papers in the kitchen. Officers responding to the call found Raveesh face down on the floor with his hands and feet bound together behind his back. He was unresponsive, and paramedics pronounced him dead at the scene. An autopsy revealed that duct tape had been wrapped around his head, including his mouth and nose, and a pathologist opined that Raveesh died from suffocation due to the duct tape, with other conditions such as a deviated septum and coronary artery disease playing a role. Hemorrhages in his eyes indicated that he had struggled to breathe for a while before dying.

The day after the home invasion, Fritz met with Drummer and her brother. Drummer told Fritz that, "It went bad, like he's dead." Austin likewise said that "it all went bad" and that "the wife was screaming" and saying that they would pay and "just don't hurt him." Drummer added that a man (apparently Garcia) "was crazy" and "tripping." When asked what he did, Drummer replied that he "just sat there and, like, watched him."

The police took swabs from Raveesh's right hand, and a crime lab technician testified that Drummer was a likely contributor to the DNA found on the swab. In addition, cell phone tower records showed that on the night of the home invasion Drummer's phone interacted with Los Gatos cell phone towers four times between 11:00 p.m. and 1:15 a.m.

4

### 3. The Verdict

On November 4, 2013, a jury convicted Drummer of murder, robbery, criminal threats, and false imprisonment as well as misdemeanor battery, a lesser included offense of the charged assault with a deadly weapon. The jury also found true the special circumstance that the murder occurred during commission of a robbery (§ 190.2, subd. (a)(17)) with which Drummer was charged. In addition, the jury found true the gang allegations, and the court found true the prior prison term allegation. (§ 667.5, subd. (b).)

### 4. The Sentence

For the murder, robbery, criminal threats, and false imprisonment convictions, the trial court sentenced Drummer to an indeterminate term of life without possibility of parole, a consecutive indeterminate term of 15 years to life, and a determinate term of 11 years. On the misdemeanor assault conviction, the court sentenced Drummer to 290 days in county jail, with credit for time served. The court also imposed but stayed a 10-year sentence for the gang enhancement on the murder count.

### 5. The Direct Appeal

Drummer appealed his misdemeanor conviction and the gang enhancement, and this court struck the conviction and modified the term for the gang enhancement as well as correcting several errors in the abstract of judgment. (*People v. Drummer*, *supra*, H041826).)

## C. The Section 1172.6 Petition

In September 2019, Drummer filed a petition for resentencing under what is now section 1172.6. After appointing counsel, the trial court denied the petition without issuing an order to show cause. This court reversed and remanded with directions to issue an order to show cause and conduct an evidentiary hearing. (*People v. Drummer*, *supra*, H048576).)

5

On remand, the trial court held a hearing in which the parties submitted documents from the trial—10 volumes of transcripts and approximately 80 exhibits—but no additional evidence. After receiving briefing and oral argument, the trial court issued a 20-page order and decision, finding that the People had proven beyond a reasonable doubt that Drummer was guilty of murder under current law. In particular, the trial court found that Drummer was guilty of felony murder because he was a major participant in the felony and acted with reckless indifference to human life.

In finding Drummer a major participant, the trial court examined the factors listed by the Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*). In particular, the court found that the home invasion was planned by Drummer as well as Austin and that they chose to make the invasion when they knew Raveesh was present and there would be a confrontation with him. In addition, while the trial court found no evidence that Drummer used or supplied weapons, or that he knew that either of his companions had a propensity towards violence, the court found that (a) Drummer participated in the invasion, (b) he was present when Raveesh was forced on the floor, beaten and duct taped, and (c) he heard Harinder's warnings about Raveesh's medical condition and that assailants' treatment of Raveesh might kill him. The court also found that Drummer did nothing to help Raveesh. To the contrary, after Harinder's warnings, Drummer and his companions ransacked the house and disconnected phones to prevent Harinder or Raveesh from calling for help.

In finding that Drummer acted with reckless indifference, the trial court similarly examined the factors listed by the Supreme Court in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). The court noted once again that Drummer was physically present and that he was aware of Harinder's warnings about Raveesh's heart condition and the danger that their mistreatment would kill him. The court also noted that Drummer made no effort to restrain his companions or aid Raveesh, even though the home invasion lasted at least 40 minutes.

6

The trial court concluded that there was a "felony murder home invasion" and that Drummer was not entitled to resentencing under section 1172.6.

The day after the trial court issued its order denying resentencing, Drummer filed a notice of appeal.

## II. Discussion

On appeal Drummer challenges the sufficiency of the evidence underlying the trial court's findings that he was a major participant in the home invasion robbery that led to Raveesh's death and that he acted with reckless indifference to human life. As a general rule, "a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence." (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) Under this standard, the record is reviewed in the light most favorable to the challenged findings to determine whether the record contains evidence that is " 'reasonable, credible, and of solid value' " from which a rational trier of fact could find guilt beyond a reasonable doubt. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) As explained below, we find such evidence here.

### A. The Felony-Murder Rule

In 2018, the Legislature enacted legislation that "significantly narrowed the scope of the felony-murder rule." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).) Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended section 189 to restrict liability for felony murder to three categories of participants in the underlying felony: (1) actual killers (§ 189, subd. (e)(1)), (2) individuals who aided and abetted with intent to kill (§ 189, subd. (e)(2)), and (3) individuals who were "a major participant in the underlying felony and acted with reckless indifference to human life" (§ 189, subd. (e)(3)). In addition, the Legislature allowed individuals convicted of felony murder under a theory not permitted under Senate Bill No. 1437 to petition to vacate their conviction and seek resentencing on any remaining counts. (§ 1172.6, subd. (a)(1).)

7

The major participant and reckless indifference requirements in Senate Bill No. 1437's third category were drawn from section 190.2, subdivision (d). (*Strong*, *supra*, 13 Cal.5th at p. 703.) That provision contains one of the special circumstances for which a defendant convicted of murder in the first degree may be sentenced to death or to life without eligibility for parole. These requirements in turn were drawn from United States Supreme Court decisions such as *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*), and *Enmund v. Florida* (1982) 458 U.S. 782 concerning imposition of capital punishment for felony murder. (*Strong*, *supra*, 13 Cal.5th at p. 705.) Under these decisions, to justify capital punishment for felony murder, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks*, *supra*, 61 Cal.4th at p. 802.) "The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Id*. at p. 801.) For example, *Tison* approved imposition of the death penalty upon individuals who were "actively involved in every element of [a] kidnapping-robbery" and "physically present during the entire sequence of activity" culminating in the murder of a family. (*Id*. at p. 802.)

In determining whether an individual was a major participant in a felony murder, "the ultimate question" is "whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.'" (*Banks*, *supra*, 61 Cal.4th at p. 803.) Our Supreme Court has identified a number of factors that "may play a role in determining" whether a defendant is sufficiently culpable to satisfy this requirement: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene

of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Id*. at p. 803, fn. omitted.)

In determining whether an individual acted with reckless indifference, courts examine whether the individual " ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' " (*Banks*, *supra*, 61 Cal.4th at p. 801.)  This requirement has both subjective and objective elements.  (*Ibid*.)  First, the defendant must be subjectively " 'aware of and willingly involved in the violent manner in which the particular offense is committed' " and "consciously disregard 'the significant risk of death his or her actions create.'  [Citations.]" (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)  Second, " ' "[t]he risk [of death] must be of such a nature and degree that . . . its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' [Citation.]" (*Ibid*.)

Our Supreme Court has identified a "nonexhaustive" list of factors to consider in applying the reckless indifference requirement: "use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks." (*Strong*, *supra*, 13 Cal.5th at p. 706.)  Because the major participant and reckless indifference requirements "often " ' "significantly overlap," ' " the reckless indifference factors overlap with the major participant factors. (*Ibid*.)

## B.  Application

The trial court's findings that the Drummer was a major participant in the felony murder of Raveesh and that Drummer acted with reckless indifference are supported by substantial evidence.

### 1. *Major Participant*

Applying the factors identified by our Supreme Court, the trial court found that Drummer was a major participant in the felony murder of Raveesh. This finding is well-supported.

Drummer was not an ordinary aider and abettor with only peripheral involvement. To the contrary, Drummer played a central role in the home invasion robbery that resulted in Raveesh's death. Drummer helped plan the robbery, obtaining from Austin's sister Fritz a diagram of the layout of Raveesh's home and asking her about gold in the house. In addition, Drummer personally participated in the invasion: Drummer's cell phone records placed him near the robbery when it occurred, traces of his DNA were found on Raveesh's hand, and after the robbery Drummer told Fritz what happened during the robbery, thereby implicitly admitting his participation.

Drummer was physically present during the activities that led to Raveesh's death. As mentioned above, Drummer's DNA was found on Raveesh's hand. In addition, when Austin told his sister that the "other guy" hit Raveesh and that Harinder was screaming, Drummer agreed, thereby confirming that he was present. As a consequence, the trial court had ample basis for finding that "Drummer played a role in holding Raveesh or at least was present when Raveesh was being put down on the floor, beaten, and taped, despite Harinder's caution about his medical condition."

Drummer also was aware of the danger to Raveesh. As the trial court acknowledged, there was no evidence that Drummer used or supplied lethal weapons or that either Austin or Garcia had a propensity for violence. Nonetheless, the trial court found that Drummer and his companions knew that a physical confrontation was likely because they planned to invade Raveesh's home late at night when it was likely to be occupied and, indeed, saw Raveesh there before they entered. Moreover, Drummer was present when Raveesh was brutally beaten: His autopsy showed bruising and abrasions

10

on his eyes, nose, lips, and ears, as well as bruises on his arm and his abdomen. In addition, duct tape was wrapped around his head, covering his mouth and nose.

Drummer also was present when Raveesh pleaded for help and Harinder warned that Raveesh was "a heart patient. He'll die. And he has a breathing problem." Later, after Raveesh again asked for help, Harinder pleaded two or three times "[p]lease don't do that to him. He'll die." Based on this testimony, the trial court had ample basis for finding that Drummer was subjectively aware of Raveesh's heart and breathing problems and the grave risk of death that the brutal treatment and duct taping of a man in such a condition created.

Finally, Drummer "did nothing whatsoever to aid the dying Raveesh or respond to the pleas of Harinder." Drummer admitted that he simply watched when Raveesh was beaten. Moreover, afterwards, Drummer and his compatriots ransacked the house, trying "to find things worth stealing." Harinder testified that they interrogated her about the location of valuables, forcing to her to stay on the ground for what she thought was hours while they went through every closet, cabinet, and drawer in the kitchen. However, during this time, the robbers did nothing to help Raveesh other than (falsely) saying that he was okay. Finally, Drummer and his companions destroyed the cellphones that they found, apparently to prevent the victims from calling for help after they left.

Thus, there was substantial evidence that most of the major participant factors were satisfied: Drummer planned the home invasion robbery and actively participated in it; he was physically present when Raveesh was beaten and duct taped and thus in a position to help Raveesh; he heard Harinder's warnings about Raveesh's medical condition and the danger Raveesh would die from his treatment; however, he did nothing to help Raveesh and instead ransacked the house in search of valuables. Based on this evidence, the trial court had a more than sufficient basis for concluding that Drummer was a major participant in Raveesh's felony murder.

11

### 2. *Reckless Indifference*

The trial court also had a sufficient basis for finding that Drummer acted with reckless indifference to human life.  Indeed, much of the evidence showing that Drummer was a major participant also shows that Drummer acted with conscious disregard for the significant risk of death that the brutal treatment of Raveesh created.  (See *Strong*, *supra*, 13 Cal.5th at p. 706 ["the major participant and reckless indifference elements often ' "strongly overlap" ' "].)

The evidence clearly shows a conscious disregard for Raveesh's safety.  As noted above, Drummer planned the invasion at night when Raveesh would likely be present, and was aware of Raveesh' presence before entering.  Drummer admittedly was present when Raveesh was brutally beaten.  He heard Raveesh's pleas for help and Harinder's warnings about Raveesh's medical condition and the danger that Raveesh might die.  However, Drummer did nothing to help Raveesh or even moderate his treatment, instead just watching.  After Harinder's warning, Drummer and his companions took their time ransacking the house.  And, once they were done, Drummer and his associates destroyed the cellphones they found, thereby hindering the ability of Harinder and Raveesh to obtain help.

These factors support the trial court's finding that Raveesh acted with reckless indifference for Raveesh's safety.  (See *Clark*, *supra*, 63 Cal.4th at p. 619 [noting "the importance of presence to culpability"]; *ibid*. [" 'If the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders.' "]; *ibid*. ["appellate courts have considered relevant a defendant's failure to provide aid while present at the scene"]); *id*. at p. 620 ["The duration of the interaction between victims and perpetrators is therefore one consideration in assessing whether a defendant was recklessly indifferent to human life."].)

In addition, the evidence showed that Drummer was subjectively aware of the risk to death to Raveesh.  Harinder told Drummer and his associates that Raveesh was "a

heart patent" and that "he has a breathing problem." Moreover, in doing so, she expressly warned that "[h]e'll die." She also repeated at least two additional times "[h]e'll die." In light of these repeated warnings, the trial court had ample basis for finding that Drummer and his associates were aware that placing duct tape over the mouth and nose of a man with a heart condition and a breathing problem after brutally beating him would create a significant risk of death.

At oral argument, Drummer asserted that he was unaware of the specific risk that caused Raveesh's death because the medical examiner concluded that Raveesh's death was caused by asphyxiation due to a deviated nasal septum and Harinder's warnings about Raveesh's heart condition did not make him aware of that risk. This argument has not been properly raised. Drummer did not argue in either the trial court or his briefing on appeal that he was unaware of the specific risk that led to Raveesh's death, and therefore this argument has been waived. (See, e.g., *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 ["An appellate court is not required to consider any point made for the first time at oral argument, and it will be deemed waived."]; *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 [" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . ." ' "].)

In any event, Drummer's argument is baseless. Contrary to Drummer's assertion at oral argument, Harinder did warn him and his associates about the risk that led to Raveesh's death. In addition to saying that Raveesh was "a heart patient," she told Drummer and his associates that Raveesh "has a breathing problem." Moreover, the medical examiner did not find that Raveesh's deviated septum caused his death. The medical examiner found that the cause of death was "probably asphyxia due to suffocation due to duct tape over a mouth." The examiner did mention the deviated septum, but only as one of several "significant conditions that played a role in the death," and he included "coronary artery disease" and "hypertensive cardio vascular disease" in

13

those conditions.  Thus, the medical examiner's testimony does nothing to reduce Drummer's awareness of the danger that led to Raveesh's death.

In sum, because substantial evidence supports the trial court's findings that Drummer was a major participant in the home invasion robbery and that he acted with reckless indifference to human life, the trial court properly found him guilty of murder under the felony-murder statute as amended by Senate Bill No. 1437 and denied relief under section 1172.6.

### III.  DISPOSITION

The order denying Drummer's petition for resentencing is affirmed.

_____

BROMBERG, J.

WE CONCUR:

_____

LIE, ACTING P. J.

_____

WILSON, J.

*People v. Drummer*
H051441